UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK
_____

JUNEAU WANG,

                Plaintiff,

      v.

BETHLEHEM CENTRAL SCHOOL DISTRICT
and JODY MONROE,

                Defendants.
_____

**VERIFIED COMPLAINT**

Civ. No. _1:21-cv-01023_ (LEK/DJS)

Plaintiff Juneau Wang ("Wang" or "Plaintiff"), by his attorneys Sweeney Lev, LLC, as and for his Verified Complaint against the Bethlehem Central School District ("District" or "Bethlehem Defendant") and Jody Monroe, the Superintendent of the Bethlehem Central School District ("Superintendent" or "Monroe", with the District and Monroe collectively referred to as "Defendants"), respectfully alleges as follows:

## INTRODUCTION, SUMMARY, AND NATURE OF ACTION

This First Amendment, Fourteenth Amendment, Civil Rights Act of 1964, and Title IX of the Education Amendments of 1972 case arises out of the unconstitutional, illegal, discriminatory, and otherwise improper actions by Superintendent Jody Monroe and the Bethlehem Central School District to punish Juneau Wang, an Asian male, by excluding him in June 2020 from speaking as the selected keynote speaker at his graduation ceremony due to his prior writings (speech) and the substance of his selected Resilience Speech, which Monroe and some students and parents had objected to but which did not violate any District or other restriction or prohibition.

1

In summary, Wang, a graduating Asian male senior in the Bethlehem Central School District High School, participated in a competitive contest in the spring 2020 to select the speeches to be given at his high school graduation ceremony; his Resilience Speech that touted the importance of perseverance and resilience was unanimously selected in June 2020 by the Speech Committee; and he was designated as the class keynote speaker. However, Superintendent Monroe (who was not on the Speech Committee) received a few email messages from female students and parents of female students complaining about Wang speaking due to his creation in 2018 when he was a 15-year-old sophomore of a computer-generated document (referred to as the "bracket") that recorded the voting in tiers or brackets by a few boys to select their two most admired girls. The 2018 document contained no selection or voting criteria, no photos, no data, and no derogatory or other comments about the girls.

Based upon such email complaints, Monroe in June 2020 overruled the Speech Committee, revoked its selection of Wang's speech and Wang as keynote speaker, excluded him from delivering his speech, and directed a new keynote speaker be selected. Monroe said she took such exclusionary and unconstitutional actions to avoid upsetting girls at the graduation ceremony who might view him speaking as honoring him or his Resilience Speech as providing advice to them and that she found Wang an "unsuitable graduation speaker." Monroe imposed such punitive sanctions without complying with applicable District Code of Conduct and its substance and procedures; without investigating the substance of the 2018 bracket document complained about, the remedial resolution of the bracket matter by the High School Principal in April 2018, or the inaccurate email complaints she relied upon; and without providing notice to Wang and a meaningful opportunity to be heard. Moreover, inexplicably, she and the

District punished Wang in June 2020 for a document (speech) created 2 plus years earlier that communicated voting (based upon unstated opinions) about girls, a subject that teenagers (boys and girls) often and regularly communicated about without challenge, complaint, or imposition of discipline.

Monroe's and the Districts' actions violated Wang's constitutional free speech rights by punishing him for off-campus speech (the 2018 bracket and excerpts about it in his 2019 book) and by view point discrimination against the substance of his selected Resilience Speech; violated his constitutional due process rights by adding sanctions for a matter fully resolved years earlier, by disregarding applicable disciplinary due process procedures, by failing to investigate but relying upon inaccurate email complaints and information, by failing to provide notice to Wang and an opportunity to be heard before disciplinary or punitive sanctions were imposed, and by falsely describing to the District Board of Education (and to the New York Commissioner of Education when Wang appealed) the substance of the bracket document; and violated Wang's civil rights by discriminating against him substantively and procedurally because of his sex and/or race or national origin.

## **JURISDICTION AND VENUE**

1.  This action seeks to vindicate Plaintiff Wang's civil rights protected by the First and Fourteenth Amendments to the U. S. Constitution, Title VI Of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, state law, and District policies and rules. The action is brought pursuant to 42 U.S.C. § 1983. This Court has jurisdiction over this civil rights action arising under the Constitution and laws of the United States pursuant to 28 U.S.C. §§ 1331 and 1343, over the pendant state law claims pursuant to

28 U.S.C. 1367, and to declare the rights of the parties and to grant all further relief deemed necessary and proper pursuant to 28 U.S.C. §§ 2201 and 2202.

2.  Venue is proper in the Northern District of New York pursuant to 28 U.S.C. § 1391(a) because Defendants reside within the Northern District of New York and the events that gave rise to this action occurred within such district.

**PARTIES**

3.  Juneau Wang is a resident of Slingerlands, New York and an Asian male, who was an eighteen-year-old student in the senior class at the High School in the Bethlehem Central School District when Defendants Monroe and the District engaged in the unconstitutional, illegal, discriminatory, and other improper actions against him complained about.

4.  The Bethlehem Central School District is a political subdivision of the State of New York located within Albany County, New York and maintains its administrative offices at 700 Delaware Avenue, Delmar, NY 12054.

5.  Jody Monroe is and was the Superintendent of the District and at all times hereinafter was an employee of the District, with her role, authority, and duties as the Superintendent specified in her Agreement of Employment with the District and under N.Y. Education law. Monroe resides at Ballston Lake, N.Y. 12020.

**STATEMENT OF FACTS APPLICABLE TO ALL CLAIMS**

Wang's Selection as Keynote Graduation Speaker

6.  Wang, while a senior at Bethlehem Central High School, in April and May 2020 at age 18, participated in Bethlehem High School Graduation Speaker Competition ("Speaker Competition"), prepared his Resilience Speech, and entered such speech into the Speaker Competition.

7.   The Speaker Competition, announced in April 2020, was described orally and in writing as "Graduation Speaker Competition" and "graduation speaker contest", with the speakers to be selected by the Speech Committee, consisting of High School Principal David Doemel ("Principal Doemel"), High School Hall Principal Nicole Conway, and 7 other High School teachers and advisors, with their decision to be based upon the merit of the speech, in accordance with announced contest goal, standards, and rules.

8.   Wang relied upon the announced rules and explanations for the Speaker Competition to voluntarily participate in the contest as a "contestant", and he understood and expected that the High School and the District would abide by the contest rules.

9.   Wang's Resilience Speech touted the value and need to be resilient, to persevere, and to overcome adversity in life with the speech reflecting his personal experiences and positive outlook. The text of the speech is annexed as Exhibit A.

10.   On June 1, 2020, the Speech Committee selected Wang's Resilience Speech, based upon its text, to be recorded and presented at the High School Graduation Ceremony and selected Wang as the Graduation keynote speaker.

11.   Such selection was announced publicly to the senior class community, including Wang's classmates, teachers and advisors.

12.   The selection by the Speech Committee of Wang's speech with Wang as keynote speaker was unanimous.

13.   Wang devoted substantial time to write and prepare his Resilience Speech for submission in the Speech Competition and, after its selection, to refine and video record the speech for presentation at the graduation ceremony, as requested by the Speech Committee.

14.   The selection of Wang's speech to be given by him as the keynote speaker was a prestigious award and great honor that conveyed the Speech Committee's judgment and decision about the importance, quality, and value of his speech and his role as the keynote speaker would recognize him publicly as a respected, thoughtful, and influential member of his graduating class.

15.   Such selection and the associated award and honor were important and valuable, with long term significance as the selection and award would be recorded in Wang's High School student records, and in records, reports and articles about his High School Graduation and class.

16.   The recorded Resilience Speech and its message would have enduring value as it would be shown at the Graduation ceremony and likely at future reunion events, with it viewed multiple times by his classmates.

17.   The selection as keynote speaker provided Wang the opportunity to speak directly to his class, which consisted of 300+ students, about matters important to him personally and to his class - resilience and perseverance - and to use such speech to build goodwill, respect and appreciation of classmates and to reduce the animosity, hostility, or discrimination of the students who had vilified, stigmatized, or discriminated against him in the past.

<u>Interference with and Revocation of his Selection as Keynote Speaker</u>

18.   Following Wang's selection as keynote speaker and the public announcement of such selection, Monroe and others received email complaints from a few female classmates or parents of female classmates objecting to Wang speaking at the graduation ceremony as the keynote speaker.

19.   The June 2020 complainers objected that Wang had been involved in the January 2018 creation, when he was a sophomore aged 15, of a private computer-created document that reflected the voting by a few boys about the girls they knew and admired, referred to as the "bracket". The private document was discovered months after its creation by a girl in his class doing an internet search, and was then disseminated publicly by her and/or others.

20.   Monroe relied upon four email complaints - two from Wang's female classmates and two from parents of female classmates - and without investigating their accuracy, overruled the Speech Committee on June 4, 2020.

21.   The four email complaints Monroe relied on contained materially false, inaccurate, or misleading statements about Wang in 2018 or the bracket, including the following false statements: that Wang had "disseminated the bracket", had "refused to apologize", had "expressed little in the way of remorse or comprehension", and had "degraded" the female members of the class.

22.   Such email complaints also objected that the High School administration (Principal Doemel and Hall Principal Conway, both on the Speech Committee), had not punished Wang "correctly" in 2018 or had not handled the 2018 bracket incident "as well as they could have." All complainers requested that additional disciplinary or punitive sanctions - exclusion from him speaking - be imposed on Wang in June 2020.

23.   In reliance upon and deference to such complaints, Monroe revoked the Speech Committee's selection of Wang's speech and Wang. She then ordered on June 4, 2020 that Wang be excluded from speaking at the graduation ceremony; that the High School not show or permit his Resilience Speech to be shown at the graduation

ceremony; and that the Speech Committee select a new keynote speaker for the graduation ceremony.

24.  On June 5, 2020, Monroe assured a complaining female parent in two successive emails that Wang would not be permitted to speak at the graduation ceremony, with such assurances conveying and intended to convey the message that Monroe's decision was final and would not be changed.

25.  Monroe was not a member of the Speech Committee when she took such actions; the Speech Committee rules did not authorize Monroe, the District Superintendent, or any other person to reject or overrule the Speech Committee's selections; there was nothing in the Speech Competition rules that authorized such rejection or overruling; and Monroe had no express authority under her Agreement of Employment, the District's Statement of Duties of Superintendent, or N.Y. Education Law to approve or overrule the Speech Committee or to censor student speech.

26.  Upon information and belief, before making her decision to penalize Wang, Monroe was not aware of the Speaker Competition rules or their substance, did not review such rules, and did not participate in any Speech Committee selection meetings.

27. Upon information and belief, before making her decision to penalize Wang, Monroe: i) did not investigate the details of the bracket; ii) did not investigate or ascertain the details regarding Principal Doemel's resolution of the bracket matter in April 2018 or his conclusions or findings relating thereto; and iii) did not review the file containing Principal Doemel's notes and conclusions relating thereto.

28.  Upon information and belief, Monroe did not investigate or examine any copy of the bracket document to determine its substance or nature before making her final decision on June 4, 2020 to bar Wang from speaking and, as a result, she erroneously

believed the bracket "ranked photos of 64 of their female classmates in a head-to-head competition" and relied upon that error to make her decision.

The District Violated Wang's Procedural and Substantive Due Process Rights

29.  Monroe and the District: i) decided that the District Code of Conduct was not applicable to their decisions and actions regarding the revocation of Wang's selection or the sanctions it imposed; ii) imposed the punitive sanctions without complying with applicable constitutional, common law, and District mandated Code of Conduct disciplinary due process procedures requiring notice to him of such adverse actions and an opportunity for him to be heard before a final decision was made; and iii) made their decisions without abiding by or identifying the substantive rules specifying the conduct warranting disciplinary sanctions or exclusion from school activities.

30.  The punitive sanctions on Wang were imposed in June 2020, more than 2 years after the bracket matter had been fully and completely resolved by Principal Doemel in April 2018, without commencing new disciplinary proceedings.

31.  The punitive sanctions were imposed in June 2020 for writing or conduct that had occurred off campus in January 2018 and was not "Prohibited Conduct" as defined by the District Code of Conduct then in effect.

32.  The punitive sanctions were imposed in June 2020 without Monroe or the District first considering or reviewing Principal Doemel's conclusions in April 2018 that Wang and the other boys had not intended to harm, harass, or objectify anyone by creating the bracket document; and that all boys had expected that the bracket document, which had been created in private, would remain private.

33.  The District did not announce or officially reopen in June 2020 the bracket matter resolved by Principal Doemel in April 2018; and there was no basis, factual or otherwise, or authority for the District to reopen such matter.

34.  Upon information and belief, Principal Doemel believed and believes that Wang fully honored and abided by Principal Doemel's April 2018 final resolution and remedial directives and that Wang had not engaged in any conduct since then that warranted reopening such matter or adding punitive sanctions in June 2020.

35.  Monroe and the District did not inform Wang of Monroe's decision and punitive sanctions until June 8, 2020 and on that date Principal Doemel only told Wang orally that Monroe had barred him from speaking due to the 2018 bracket matter and suggested that Wang contact her directly for her explanation.

36.  Wang promptly requested the same day (June 8, 2020) that Monroe provide him the opportunity to speak with her and be heard about her decision.

37.  Monroe delayed until June 15, 2020 (a week later) scheduling time to hear his input and objections and to explain her decision to Wang.

38.  On June 15, 2020 (eleven days after making her final decision), Monroe spoke with Wang by telephone during which she stated her reasons for deciding to bar Wang from speaking and allowed Wang to state why he believed her decision was unfair, erroneous, and contrary to the District's policies. The call was recorded by Wang.

39.  Monroe stated to Wang during the June 15th call as an explanation for her exclusionary decisions and actions: some girls were "very upset" by the bracket in 2018 but others "didn't really care"; the recent complaints were likely from those very upset in 2018; she did not know how many classmates were still upset; permitting Wang to be the keynote speaker would be perceived as honoring him; his Resilience Speech was

objectionable because it would be perceived as providing advice to students; honoring him or allowing him to give advice might offend or upset some girls or their parents; and a statement in his book, *A Teenage Boy's Perspective on Life*, published in 2019, about the differing responses of girls and boys ("if girls made a bracket of guys, guys would laugh it off") had "rubbed her the wrong way".

40.   Monroe, in response to Wang's inquiry what he could do to have his Resilience Speech heard, said it was "really late" for that as he would need to change the perspectives or feelings of those that complained, implying that was needed for her decision to change and imposing an unreasonable and insurmountable burden on him.

41.   Monroe did <u>not</u> disclose to Wang during the call her understanding or misunderstanding of the substance or nature of the bracket, the substance of the email complaints she had relied upon for her decision, or that she had assured a complainer twice on June 5, 2020 that Wang and any other boy involved in the creation of the bracket document would not be permitted to speak at the graduation ceremony.

42.   During the call, Wang explained that he had learned from his transformative experiences; that the actions she was penalizing him for had occurred two and one-half years earlier; that he had made a mistake in 2018 when he was 15; that he had taken responsibility and apologized for his insensitive actions; that he apologized for his actions and was sincere; and that he had been guided by Principal Doemel in resolving the matter in 2018; that he had abided by the resolution with Principal Doemel; that he wanted inclusion and understanding of all genders and those of different color skin; and that it was important for him to speak to overcome the bias and exclusion that he had experienced since 2018.

43.   Monroe refused to change her decision but advised Wang to communicate his thoughts to the BOE in writing before its next Board meeting on June 17, 2020 so it could consider her decision and his input.

44.   On June 16, 2020, Wang submitted a written appeal letter to the Board of Education ("BOE") requesting that the BOE reverse Monroe's decision, responding to Monroe's criticism, and seeking to allow his speech be heard along with the other speakers to promote forgiveness, improvement, change, and unity in the community.

45.   Upon information and belief, Monroe provided to the BOE during the June 17, 2020 meeting or prior thereto: i) the 4 erroneous email messages she had relied upon; ii) the excerpts from *A Teenage Boy's Perspective on Life* that "rubbed her the wrong way"; and iii) her false description of the bracket as having evaluated or been based upon photos of classmates (which it was not) but that Monroe did not provide to the BOE Wang's Resilience speech which she had determined provided advice and was therefore objectionable to her.

46.   Upon information and belief, Monroe misled the BOE by, among other things, her false description of the bracket document as "ranking photos of female classmates" when, in fact, no photos were used or involved, misstating that Wang failed to apologize following the 2018 resolution of the bracket incident by Principal Doemel when, in fact, he had apologized in writing, and falsely denying she told Wang during her June 15, 2020 telephone conversation with him that it was "really late" to make the change needed for her to change her decision.

47.   On June 18, 2020, the BOE rejected Wang's appeal with its President stating in an email that the BOE had considered Wang's letter at its June 17, 2020

meeting and had upheld Monroe's decision but did not state the reasons for its decision
or the facts the BOE relied upon for its decision.

48.  Wang requested an explanation of the BOE decision and access to the
minutes of the meeting at which the matter was discussed but the BOE said there were
no recorded or prepared minutes about such matter and that its decision was final.

49.  Wang's attorney, in a letter dated June 20, 2020, sought "reconsideration
and appeal" and stated it was "intended to cause or persuade the District to reconsider
and vacate/rescind such improper decisions to minimize further harm and damages to
Mr. Wang" and stating that the District's actions violated Wang's free speech and due
process rights and the requirements of the District Code of Conduct and policies.

50. However, Monroe and the BOE refused to review or consider such letter or to
reconsider their decisions and declared that all of Wang's internal District appeal rights
had been exhausted.

51.  To pursue his N.Y. administrative appeal rights and remedies, Wang filed a
Petition with the Commissioner of Education by email on June 24, 2020 (with copy
emailed to the District) and by direct delivery on June 25, 2020 that appealed the
District's decisions and exclusionary actions, asserting that the District had violated
Wang's rights to freedom of speech, to due process of law, and to be free from illegal
discrimination, and sought a stay to allow Wang's recorded speech to be heard at the
graduation ceremony.

52.  The District opposed such stay by filing on June 25, 2020, a letter from
Monroe that included the email messages she had relied upon for her decision. Her
letter falsely described the bracket document as comparing photos of girls, falsely
stated the substance of her June 15, 2020 telephone conversation with Wang about

being "really late" to change, asserted that Wang's claim that his off campus private creation of the bracket document was protected speech was "novel", unreasonably and outrageously asserted (based upon her false description of the bracket and the erroneous complaints she submitted) that the bracket was "sexual harassment" and that barring Wang from speaking was needed to protect females from being "victimized".

53.  The District's June 25, 2020 opposition to the stay provided the first notice to Wang of Monroe's misunderstanding and her false description of the bracket and the erroneous email complaints she relied upon for her decision and to oppose the stay.

54.  Upon information and belief, Monroe knew, should have known, or could have determined with reasonable diligence and investigation, the falsity and inaccuracy of her statements about the bracket and of the email messages she relied upon.

55.  Based upon the District's such false and misleading opposition, the Commissioner denied the stay on June 25, 2020, the graduation ceremony took place on June 26, 2020 without Wang's speech being delivered, and thereafter Wang was forced to proceed with his administrative appeal with the Commissioner.

56. In its submissions during such appeal, the District: i) admitted it did not apply or abide by the District's Code of Conduct or its disciplinary rules and procedure; ii) argued that its exclusionary sanctions against Wang were not disciplinary in nature and, as a consequence, it had no obligation to provide notice or the opportunity of Wang to be heard before such sanctions were imposed; iii)  argued the Commissioner lacked legal authority to provide the relief Wang requested, including reinstatement of his speech rights or awards or monetary awards, such as attorney fees or costs; and iv) argued the matter was moot as the graduation ceremony had past and another student, a girl, had been selected as keynote speaker instead of Wang.

57.  On June 21, 2021, the Commissioner dismissed the Appeal and Petition as "moot" citing the changed circumstances (the graduation ceremony had occurred and Wang had graduated) and the Commissioner's inability to grant Wang "meaningful relief". The Commissioner, nevertheless, observed that the District's "imposition of additional, punitive measure in connection with a two-year old disciplinary incident raises substantial questions of fairness… and caution[ed] respondent from taking similar action in the future."  The Commissioner's Decision is annexed as Exhibit B.

<u>The District's Infringement of Wang's Free Speech Rights</u>

58.  The Resilience Speech, which had been created by Wang <u>off campus</u> at his home during April and May 2020 and recorded in June for showing at the Graduation Speaker Competition under its announced contest rules, was barred by Monroe and the District, in part, due to the substance and advisory nature of the speech.

59.  The writings and speech Monroe and the District objected to and relied upon to exclude and bar Wang from speaking and to censor his Resilience Speech were:

 i) the private bracket document communicating the votes by several boys in January 2018 following private discussions among them about girls (mostly classmates) the boys liked and cared for to identify the two most liked or admired girls; and

ii) the excerpts from Wang's book, *A Teenage Boy's Perspective on Life*, comparing the responses of boys to girls to a bracket or comparative evaluation.

60.  The bracket document was created by Wang and others <u>off campus</u> at a New Year's Eve Party during a vacation period in January 2018 at Wang's home on a computer using tournament playoff software available through the internet and without use of school resources or equipment.

61.  The bracket document recorded the results of private discussions and voting among a few boys about 64 girls (mostly classmates) the boys liked and cared for to identify the two most admired girls with the voting at each tier or bracket to select one-half of the names to move to the next tier and one-half to be eliminated.

62.  There were no photos in the bracket document or used by Wang or the other boys to create it; and it was not a "ranking" of photos or physical appearances of the girls, as falsely described by Monroe. The bracket contained no text (other than names), no pictures, no descriptions or data about the girls, and no stated criteria for the votes.

63.  Wang and the other boys believed, intended, and expected that the bracket document communicating their selections (and opinions) by voting would remain private and would not be discovered, publicly disseminated, or disclosed to others.

64.  Wang's book was created by him off campus at his home during 2019 without use of school resources or equipment and was published for public viewing. It mentions on page 186 the observation ("if girls made a bracket of guys, guys would laugh it off") that Monroe objected to.

65.  Monroe and the District prohibited Wang from giving the Resilience Speech to punish or sanction him for his prior writings (the bracket document and the book) and her personal objection to the advisory message of the Resilience Speech.

Differing Treatment of and Discrimination Against Wang

66.  The District treated Wang different from others similarly situated and discriminated against Wang, a racial minority student at Bethlehem Central High School, as described below, with respect to recognition of free speech and due process rights, which discrimination was due to his gender or sex and/or his race or perceived national origin.

67.  Upon information and belief, Monroe and the District did <u>not</u> consider the email messages from Wang's teachers, counselors, male students, and other students who supported Wang speaking and his good character.

68. Upon information and belief, Monroe and the District relied solely upon objections by girls and their female parents; and did not consider the input of Wang or that of the other boys in his class.

69.  Monroe objected to a statement from Wang's 2019 book about boys likely responding differently from girls to comparatives and used that statement about gender differences as a basis to punish Wang in 2020.

70.  The District, after revoking Wang's selection, selected a female Caucasian student, whose speech had been ranked by the Speech Committee in the contest lower than Wang's speech, to replace Wang as the keynote speaker.

71.  The District failed to apply to Wang and cavalierly disregarded the District Disciplinary and due process rules applicable to exclusion of a student from a school activity, including notice and the opportunity to be heard before final action is taken, that the District was obligated to apply to all students facing exclusion from student activities.

72.  The District considered the impact on or possible upset of its decisions on some girls and families with girls and ostensibly acted solely with the stated objective of protecting girls but did <u>not</u> consider (or even mention considering) its decisions impact on or possible upset of Wang or his family or other boys or the objective of protecting boys.

73.  Upon information and belief, all persons who complained and requested exclusion of Wang (the email complainers) and the person who decided to exclude

Wang (Monroe) were female Caucasians; and the BOE, which is not diverse, consisted of members who were predominantly female Caucasians and none were Asian.

74.  The District punished Wang for his involvement in selection by voting for persons of the opposite sex he admired, a common teenage boy <u>and</u> girl activity, but has not punished girls for comparing boys to determine superlative classmates or others for comparative voting and encourages or does not punish the annual voting by the High School class to select superlatives among boys and girls.

75.  The District received the complaints and imposed punishment on Wang in June 2020 at a time when bullying, harassment, hate crimes and bias against Asians in the U.S. had exploded.

<u>The Damages and Harm to Wang</u>

76.  As a direct and proximate consequence of the District's decisions and actions, Wang faced, since June 2020, exclusion from the school community and/or private activities, the issues and matters that he had resolved and put behind him in by the April 2018 resolution with Principal Doemel were revived, and Wang and his family have been the target and recipient of many insulting, offensive, disparaging, false, hateful, and angry messages about him, his character, and his purported conduct.

77.  Instead of ending his High School years on a positive and happy note with an award and honor and the opportunity to speak at graduation with Wang's good reputation and respect intact, Wang was subjected to vile and devastating false and derogatory comments and character assassination.

78.  The District's decisions, actions and mischaracterizations, caused some classmates to believe Wang had engaged in misconduct, have damaged his reputation

and acceptance among the members of his class, and resulted in his exclusion from some post-graduation activities.

79.   The District did not seek to correct the inaccurate statements or perceptions of the email complainers or to discourage their exclusionary efforts against Wang, but supported their efforts by agreeing to punish and exclude Wang from speaking.

80.   The District's actions prevented Wang from having the opportunity to address these issues in school directly with his classmates and some were left with the false impression that his exclusion was imposed for misconduct, that he had not honored his commitments to Principal Doemel, had not apologized for his 2018 errors while a 15-year-old sophomore, and had not changed or matured since 2018.

81.   The District's improper decisions and actions undermined and damaged Wang's reputation, deprived him of the opportunity to address those who were offended by his preparation of the bracket document in 2018 and to regain their goodwill, and revived and is resulting in continued vilification and stigmatization of Wang.

82.   In addition, due to the District's misconduct and failings, Wang was forced to incur substantial legal expenses and costs to protect and enforce his constitutional, statutory, and other rights in administrative proceedings and now in court.

## CLAIMS

**Count I:  As and For the First Cause of Action, Defendant's Punishment of Plaintiff Violates the First Amendment to the U.S. Constitution and 42 U.S.C. § 1983**

83.   Wang repeats and realleges each and every allegation set forth above as if fully set forth herein.

84. The District's and Monroe's punitive actions of revoking Wang's Resilience Speech selection and the accompanying honor and exclusion of him from speaking at

the graduation ceremony as punishment for his out-of-school speech and writings

violates the First Amendment to the U.S. Constitution, as applied to the states through

the Fourteenth Amendment.

85.     As a direct and foreseeable consequence of the foregoing, Juneau Wang

sustained emotional, psychological, reputational, and economic injuries and damages

and, as a result, is entitled to recover compensatory damages in an amount to be

determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and

disbursements.

**Count II:  As and For the Second Cause of Action, Defendant's Actions Violate the First Amendment to the U.S. Constitution and 42 U.S.C. § 1983**

86.  Wang repeats and realleges each and every allegation set forth above as if

fully set forth herein.

87. The District's and Monroe's punitive actions of revoking Wang's Resilience

Speech selection and the accompanying honor and exclusion of him from speaking at

the graduation ceremony because of the substance or nature of his Resilience Speech

or how it would be perceived by some females in the audience constitute viewpoint

discrimination and violates the First Amendment to the U.S. Constitution, as applied to

the states through the Fourteenth Amendment.

88. As a direct and foreseeable consequence of the foregoing, Juneau Wang

sustained emotional, psychological, reputational, and economic injuries and damages

and, as a result, is entitled to recover compensatory damages in an amount to be

determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and

disbursements.

**Count III:  As and For the Third Cause of Action, Defendant's Punishment of Plaintiff Violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983**

89.  Wang repeats and realleges each and every allegation set forth above as if fully set forth herein.

90.  The District's and Monroe's actions were unconstitutional on their face because they deprived Wang of property rights, privileges, and honors without constitutional substantive due process for, among other reasons, in that i) the District imposed an additional sanction on Wang with respect to a matter that had been fully resolved in April 2018; ii) the sanctions were imposed without a finding that Wang engaged in "prohibited student conduct" as defined in the District Code of Conduct V.; and iii) the sanctions were imposed by the District without identifying or basing it on any express standard, rule, regulation, Speech Competition specification, or stated authority but basing it upon Monroe's (and the BOE's) subjective views, assumptions, and biases.

91. As a direct and foreseeable consequence of the foregoing, Juneau Wang sustained emotional, psychological, reputational, and economic injuries and damages and, as a result, is entitled to recover compensatory damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**Count IV:  As and For the Fourth Cause of Action, Defendant's Punishment of Plaintiff Violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983**

92.  Wang repeats and realleges each and every allegation set forth above as if fully set forth herein.

93. The District's and Monroe's punitive actions were unconstitutional on their face for, among other reasons, in that the District imposed an additional sanction on Wang with respect to a matter that had been fully resolved in April 2018 and deprived

Wang of his property rights, privileges, and honors without constitutional procedural due process by failing to provide Wang with notice of the facts and bases for Monroe's and the District's decisions and actions and a meaningful opportunity for him to be heard and to correct the District's misunderstanding of the facts and applicable law before the sanctions were imposed.

94. As a direct and foreseeable consequence of the foregoing, Juneau Wang sustained emotional, psychological, reputational, and economic injuries and damages and, as a result, is entitled to recover compensatory damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**Count V:  As and For the Fifth Cause of Action, Defendant's Actions Violate Title IX of the Education Amendments of 1972**

95.  Wang repeats and realleges each and every allegation set forth above as if fully set forth herein.

96.  Title IX of the Education Amendments of 1972 provides, in pertinent part:

"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681.

97.  Title IX of the Education Amendments of 1972 applies to the entire District and the High School if any part of that District receives federal funds; and, as a consequence, the District's Disciplinary and other proceedings, sanctions imposed, speech contests, and graduation activities were and are subject to Title IX of the Education Amendments of 1972.

98.  Upon information and belief, the District annually receives and received during in the school year ending June 30, 2020 significant federal funds.

99. The District's and Monroe's punitive disciplinary sanctions of revoking Wang's Resilience Speech selection and excluding him from speaking at the graduation ceremony and by the discriminatory means or procedure used by the District to impose such disciplinary sanctions violate Title IX and Wang's right not to be excluded and discriminated against on the basis of sex or gender.

100. As a direct and foreseeable consequence of the foregoing, Juneau Wang sustained emotional, psychological, reputational, and economic injuries and damages and, as a result, is entitled to recover compensatory damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**Count VI:  As and For the Sixth Cause of Action, Defendant's Actions Violate Title VI of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1983**

101.  Wang repeats and realleges each and every allegation set forth above as if fully set forth herein.

102.  Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000d, et seq., prohibits discrimination on the basis of race, color, and national origin in programs and activities receiving federal financial assistance.

103.  The District's and Monroe's punitive sanctions of revoking Wang's Resilience Speech selection and excluding him from speaking at the graduation ceremony and by the discriminatory means or procedure used by the District to impose such disciplinary sanctions violate Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d et seq., and 42 U.S.C. § 1983 and Wang's right not to be excluded and discriminated against on the basis of race or national origin.

104. As a direct and foreseeable consequence of the foregoing, Juneau Wang sustained emotional, psychological, reputational, and economic injuries and damages

and, as a result, is entitled to recover compensatory damages in an amount to be

determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and

disbursements.

**Count VII:  As and For the Seventh Cause of Action, Defendant's Actions Violate N.Y. Human Rights Law, the District Policies and its Code of Conduct**

105.  Wang repeats and realleges each and every allegation set forth above as if

fully set forth herein.

106.  New York Human Rights Law makes it an "unlawful discriminatory

practice" for an educational institution to deny the use of its facilities to any person

otherwise qualified by reason of his race, national origin, or sex; and New York's

The Dignity For All Students Act establishes the policy that no student be

subjected to discrimination based on a person's actual or perceived race, national

origin, gender, or sex by school employees on school property or at a school

function and obligates the District to adopt and implement policies to prevent such

discrimination.

107.  District Policy 0115 (with corresponding Policy Regulation 0115-R),
adopted to implement federal and state law prohibiting discrimination against students,
provides that:

> "The Board, its officers, and employees shall not discriminate against any
> student on the basis of legally protected classes such as, but not limited to:
> race; color; national origin; creed; religion; marital status; sex (including
> pregnancy, childbirth or related medical condition); age...This policy of
> nondiscrimination includes access by students educational programs,
> counseling services for students, course offerings, and student activities."

108. District Code of Conduct Section IV A. Student right adopted to implement
federal and state law provides that:

> "1. Each student under the age of twenty-one has the right to take part in all
> District activities and education for which s/he is eligible regardless of real
> or perceived race, color, weight, national origin, ethnic group, religion,

religious practice, economic status, disability, sexual orientation, gender, gender identity, gender expression, or sex."

109.  The District's and Monroe's punitive and exclusionary sanctions of revoking Wang's Resilience Speech selection and excluding him from speaking at the graduation ceremony and the discriminatory means or procedure used by the District to impose such disciplinary sanctions violate Wang's right under New York Human Rights Law and the District's policies and regulations not to be discriminated against and excluded from student activities on the basis of sex, gender, race or national origin.

110. As a direct and foreseeable consequence of the foregoing, Juneau Wang sustained emotional, psychological, reputational, and economic injuries and damages and, as a result, is entitled to recover compensatory damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**Count VIII:  As and For the Eighth Cause of Action, the Defendant District's Actions Breached Wang's Speech Competition Contract Rights.**

111.  Wang repeats and realleges each and every allegation set forth above as if fully set forth herein.

112.  Wang's creation and submission of his Resilience Speech in the Speech Competition, in accordance with the announced High School contest rules, the selection and award to him by the Speech Committee of the right to speak as keynote speaker and his devotion of additional time and effort after his selection to refine and record his speech for showing at the ceremony created a contract.

113.  The District's actions of revoking Wang's Resilience Speech selection and the accompanying honor and exclusion of him from speaking at the graduation ceremony outside the contest rules, based upon Monroe's subjective views,

assumptions, and biases, and overriding his selection by the Speech Committee breached Wang's contractual rights and violated applicable contest rules.

114. As a direct and foreseeable consequence of the foregoing, Juneau Wang sustained emotional, psychological, reputational, and economic injuries and damages and, as a result, is entitled to recover compensatory damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**Count IX:  As and For the Ninth Cause of Action, Defendant's Punishment of Plaintiff Violates the District's Express and Common Law Due Process Standards for Disciplinary Actions**

115.  Wang repeats and realleges each and every allegation set forth above as if fully set forth herein.

116.  The District Code of Conduct (Section IV.A.5) provides that in disciplinary matters "students will be afforded a due process hearing where they will have the right to present their version of the relevant events to school personnel and to question and review any witnesses or evidence brought against them by the school administration before imposition of a penalty."

117.  The District's and Monroe's actions were improper on their face because they imposed punitive disciplinary sanctions without the District adhering to its established procedural standards as set forth in the District Code of Conduct and generally recognized procedures applicable to public school disciplinary matters that required notice to Wang and a hearing or an opportunity for him to be heard <u>before</u> sanctions were imposed and use by the District of fundamentally fair and impartial procedures to determine the facts and the validity of imposing discipline, including exclusion from school activities.

118. As a direct and foreseeable consequence of the foregoing, Juneau Wang sustained emotional, psychological, reputational, and economic injuries and damages and, as a result, is entitled to recover compensatory damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**Count X:  As and For the Tenth Cause of Action, Defendant's Unconstitutional, Illegal, Discriminatory, and Grossly Improper Actions Subjected Wang to Negligent Infliction of Emotional Distress**

119.  Wang repeats and realleges each and every allegation set forth above as if fully set forth herein.

120. The District and Monroe had duties under District policies and applicable law  to comply with applicable law intended to protect students in the District from harm and to act in accordance with accepted standards of care with respect to such students; and Monroe, as the District Superintendent, was obligated under District policies, applicable law, and her Agreement of Employment with the District to diligently and in accordance with accepted professional standards perform and discharge the duties and responsibilities of Superintendent of the District as the same are set forth in N.Y. Education Law and in other applicable statutes, laws, rules and/or regulations and such duties and/or responsibilities as are established by the BOE pursuant to such statutes, laws, rules, and/or regulations.

121. Monroe's duties also included: to be familiar with the District Code of Conduct; to know school policies and rules; to enforce them in a fair and consistent manner; to support student participation in appropriate extracurricular activities; to be responsible for enforcing the Code of Conduct; to ensuring that all disciplinary cases are resolved promptly and fairly; to abide by applicable laws and regulations; and to ensure

that students have the opportunity to communicate regularly with and have access to the administrators for redress of grievances.

122. The actions of Monroe and the District and the means or procedure used by them to impose disciplinary sanctions on Wang were grossly negligent and deficient in that they acted contrary to the U.S. Constitution, to applicable state law, to the District Code of Conduct, to District due process procedural requirements, disciplinary policies and objectives, and they failed to consider the impact of their actions on Wang, including to his reputation, his inclusion in or exclusion from the community, and to his physical and emotional well-being.

123.  The District's and Monroe's negligent actions include, but are not limited to, Monroe's failure to investigate the facts alleged in the email complaints by the few female complainers or their direct knowledge of Wang, which resulted in her reliance upon inaccurate information and false statements about Wang and the bracket to impose punitive sanctions upon Wang; her failure to investigate the resolution of the bracket incident by Principal Doemel and his findings in April 2018; her failure to investigate the bracket document, with the result that she was ignorant of its substance and nature when she made her punitive and exclusionary decision; her misrepresentation of the bracket to others, including to the BOE when it was considering Wang's appeal, which resulted in denial of his appeal, and to the Commissioner of Education when the Commissioner  was considering Wang's request for a stay from the Commissioner, which resulted in denial of the stay; her unreasonable and extraordinary delay in alerting Wang to her adverse actions against him and hearing his objections; her failure to inform him of the substance of the erroneous email messages she relied upon; her unreasonable decision that the District Code, including

its procedures and substance, was not applicable to the additional disciplinary sanctions she imposed on Wang for a matter resolved over 2 years earlier; her failure to abide by the procedural and substantive due process provisions of the District Code of Conduct; her failure to consider and to abide by specified District educational and disciplinary policies and objectives; her careless interference to Wang's Constitutional free speech rights; her discrimination against Wang; her failure to consider and her disregard of the speech competition rules; and her negligent failure to abide by the contractual and statutory obligations applicable to her as District Superintendent.

124. The District's and Monroe's actions and inactions with respect to Wang, as alleged herein, evidenced and amounted to gross, willful or wanton negligence, recklessness, an egregious deviation from applicable constitutional, statutory and District specified standards and requirements, and cavalier indifference to and conscious disregard of Wang's protected rights, warranting the assessment of compensatory and punitive damages against her and her employer.

125. As a direct and foreseeable consequence of the foregoing, Juneau Wang sustained emotional, psychological, reputational, and economic injuries and damages and, as a result, is entitled to recover compensatory and punitive damages in amounts to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## **PRAYER FOR RELIEF**

 **WHEREFORE**, Plaintiff Juneau Wang demands judgment against Defendants Bethlehem Central School District and Jody Monroe for the following relief:

(a)     Declare that Wang, as a student in the District, had a constitutional right to free speech under the First and Fourteenth Amendment to the U.S. Constitution and

that the District's disciplinary action and sanctions against Wang in June 2020 for his out-of-school speech in 2018 and 2019 violated such rights;

(b)      Declare that Wang, as a student in the District, had a constitutional right to free speech under the First and Fourteenth Amendment to the U.S. Constitution to deliver his Resilience Speech and that the Defendants' actions in June 2020 against Wang, on their face, violate the First and Fourteenth Amendments to the U.S. Constitution because they constitute viewpoint discrimination with respect to such speech;

(c)      Declare that Wang, as a student in the District, had a constitutional right to procedural due process under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and that the Defendants' actions in June 2020 to punish or discipline Wang were taken without procedural due process violate such rights;

(d)      Declare that Wang, as a student in the District, had a constitutional right to substantive due process under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution not to be punished in June 2020 for a matter fully resolved and closed in April 2018 are not based upon any disciplinary rule, regulation or standard and that the Defendants' actions to punish or discipline Wang thereby violate such rights;

(e)     Declare that the Defendants' actions to punish Wang in June 2020 and/or the means or procedure used discriminated against him on the basis of his sex or gender and thereby violate Title IX of the Education Amendments of 1972;

(f)      Declare that the Defendants' actions to punish Wang and/or the means or procedure used discriminated against him on the basis of his race or national origin and thereby violate Title VI of the Civil Rights Act of 1964.

(g)     Declare that the Defendants' actions to punish Wang discriminated against him on the basis of his race or national origin and thereby violate The Dignity For All Students Act, the District Code of Conduct and District Policies.

(h)     Declare that the Defendants' actions to punish Wang in June 2020 were taken without complying with Common Law Due Process Requirements and the District's Code of Conduct and violate state law and District policies and requirements;

(i)     Declare that the District Defendant's actions to revoke Wang's selection as keynote speaker and to bar his speech breached Wang's contract rights arising from his participation in the Speech Competition;

(j)     Declare that Defendants' actions constituted negligent infliction of emotional distress on Wang;

(k)     Reinstate the Speech Committee's selection of Wang's Resilience Speech and Wang as a designated keynote speaker and direct that Wang's recorded Resilience Speech be included with recordings for the Graduation Ceremony;

(l)     Expunge all school records regarding the imposition by Defendants of discipline, sanctions, or other adverse decisions on Wang in or after June 2020 and expunge or redact all false email statements received by the District in or after June 2020 regarding the bracket matter or Wang;

(m)     Direct that the Defendants inform the public and Wang's classmates that the District will abide by Constitutional free speech rights of students and that the District erred in revoking the Speech Committee's selection of Wang's Resilience Speech and his designation as a keynote speaker;

(n)     Order that the District implement The Dignity For All Students Act to minimize the continuing District discrimination and harm to Wang and others similarly

situated and to file applicable reports required by such law regarding the Defendants'
unlawful discrimination against Wang;

(o)    Award Wang compensatory damages on each of Counts I to X in amounts
to be determined at trial for the injuries, harm, and damages to him;

(p)    Award Wang punitive damages against Monroe and the District, jointly
and severally, on Count X and other counts, as applicable, in an amount to be
determined at trial for Defendants' gross, willful or wanton negligence and their cavalier
disregard of and indifference to Wang's protected Constitutional free speech and due
process rights and Wang's rights not to be illegally discriminated against;

(q)    Award Wang costs and reasonable attorneys' fees pursuant to 42 U.S.C. §
1988 and applicable state law; and

(r)    Grant Wang such other and further relief as this Court deems just and
appropriate.

Dated:  September 16, 2021            Respectfully submitted,

_____
Gerald B. Sweeney, Esq. (Bar #703032)
SWEENEY LEV LLC
460 Bloomfield Avenue, Suite 200
Montclair, NJ 07042
Tel: (973) 509-1800
Fax: (973) 509-1074
gsweeney@sweeneylev.com

## <u>VERIFICATION</u>

I, Juneau Wang, hereby affirm under the penalties of perjury:

1.  I am over the age of 18 and competent to testify.

2.  I have read the factual allegations in the foregoing Verified Complaint.

3.  The factual allegations are, to the best of my knowledge and belief, true and correct.

Dated:  September 16, 2021

Juneau Wang